Filed 1/9/25  P. v. Clay CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083077 |
| v. | (Super.Ct.No. INF2300767) |
| DONTAE EARL CLAY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry C. Yang, Judge.
Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and
Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and
Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Dontae Earl Clay guilty of several offenses
committed during a domestic violence incident, even though at trial the victims, his wife

1

and teenage stepdaughter, recanted their statements to police. He argues his trial counsel was ineffective for failing to impeach his wife with evidence of her criminal record. We decline to consider his ineffective assistance claim on direct appeal. That is his only claim of error, so we affirm the judgment.

FACTS

On February 24, 2023, Clay's wife told 911 dispatch that Clay had kicked a hole in a door at their home, pushed her to the ground, threatened to beat her and strangle her, choked her with a phone charger cord, and struck both her and her daughter (his stepdaughter) with the cord. She and her daughter later gave police officers roughly the same account. Both had visible, minor injuries.

Clay was arrested and charged with inflicting corporal injury on a spouse (Pen. Code[1], § 273.5, subd (a), count 1), making a criminal threat (§ 422, count 2), misdemeanor child abuse (§ 273a, subd. (b), count 3) and misdemeanor infliction of physical punishment on a child (§ 273d, subd. (a), count 4). The People also alleged Clay had a prior strike, a 2002 burglary conviction, and alleged two aggravating factors.

During trial, the court considered whether the parties would be permitted to impeach Clay's wife with her 2016 conviction for violating section 273d, a child abuse offense that was originally a felony but reduced to a misdemeanor when her probation was terminated early. Both parties asked to be allowed to impeach her with the conviction, but the prosecution asked the court to "sanitize the conviction such that it's

---

[1] Undesignated statutory references are to the Penal Code.

2

only referred to as a misdemeanor crime of moral turpitude," while the defense wanted to "be able to refer to the specific description of the offense." The court weighed the probative value of the evidence against its potential for undue prejudice under section 352, and ruled in favor of the prosecution. That ruling is not challenged here.

At trial, Clay's wife and his stepdaughter were called as prosecution witnesses, but both recanted their statements to police. They denied that Clay fought with his wife and attributed their injuries to a fight between Clay's wife and an unnamed "female." Clay's wife explained she had spent the previous night at her mother's house and returned to find her husband, her brother, and the female, a friend of her brother, in the back yard. She was upset to find Clay "laughing and enjoying [himself] with a female", and she "got in a little scuffle with her." Her daughter was scraped by a tree branch while running to help.

During Clay's wife's testimony, neither the prosecution nor the defense asked her about her 2016 conviction.

Later in the prosecution's case-in-chief, outside the presence of the jury, the parties and the court discussed several "housekeeping" matters, including jury instructions. The prosecutor argued a jury instruction about Clay's wife's 2016 conviction, previously requested by the defense, was not "appropriate at this point" because the conviction had not "come out in evidence." Defense counsel then expressed his understanding that there was a stipulation that needed to be read to the jury about the prior conviction. The court and the prosecutor agreed there had been no on-record

3

stipulation to read anything to the jury, and the prosecutor represented there had been no off-the-record discussions between counsel on the issue. Defense counsel responded: "I thought—that is how it's done in different courthouses. If there is something you didn't want to ask...", but then dropped the issue without completing his thought. The parties and the court then agreed the proposed instruction about the 2016 conviction should not be given to the jury if no evidence of the conviction was admitted.

The conviction was not raised in the remainder of the prosecution's case in chief, and the defense rested without presenting any evidence.

The jury found Clay guilty on counts 2 and 3 as charged, and found him guilty of the lesser included offenses of count 1 (§ 243, subd. (e)(1), simple battery on a spouse) and count 4 (§ 242, simple battery). The trial court found true the alleged aggravating factors and prior strike allegation and sentenced Clay to a total term of 2 years, 8 months.

## DISCUSSION

Clay argues his trial counsel provided ineffective assistance by failing to impeach his wife with her 2016 conviction. We decline to decide the merits of this argument.

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) On direct appeal, a conviction will be reversed for

4

ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

The record does not definitively establish why Clay's trial counsel did not impeach Clay's wife with her 2016 conviction. According to Clay, the record shows his lawyer did not do so because he mistakenly believed the jury would be read a stipulation about the conviction. That misunderstanding came to light, however, while the prosecution was still completing its case in chief. There does not appear to have been any reason the defense could not have called Clay's wife to testify again, as part of the defense's case. The record does not disclose why defense counsel did not do so.

It is conceivable that Clay is correct that his counsel subjectively lacked a good reason to refrain from impeaching Clay's wife with her 2016 conviction. Perhaps counsel simply failed to consider the possibility of calling her during the defense case, or decided without basis that would not be permitted.

But it is also possible counsel had sound reasons not to impeach Clay's wife. Her trial testimony, though a prosecution witness, turned out to be favorable to the defense. She recanted her statements to police and denied Clay committed any of the acts giving rise to his charges. Defense counsel could have reasonably decided it would be best for the defense *not* to impeach her, in the hope the jury would credit her trial testimony over

5

her earlier statements to police. Moreover, recalling her as a witness, or using the conviction in her cross-examination, would have given the *prosecution* the ability to question her about the same thing, which could diminish the value of her favorable testimony. Of course, as Clay argues on appeal, "[t]rial counsel could have used [her] crime of moral turpitude to challenge her statement to the police while still maintaining that her trial testimony was credible." Whether that would have been the wisest course of action for the defense, however, is at least debatable, if not doubtful.

Thus, the record does not affirmatively disclose defense counsel had no rational purpose for failing to impeach Clay's wife with her 2016 conviction, that counsel was asked for a reason and failed to provide one, or that there could be no satisfactory explanation. (See *Mai*, *supra*, 57 Cal.4th at p. 1009.) We therefore decline to decide the merits of Clay's ineffective assistance claim here. The issue is better considered in a habeas corpus proceeding with a record developed for it that includes counsel's testimony. As this is the only issue Clay has raised here, we affirm the judgment.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____<br>J.

We concur:

McKINSTER_____
       Acting P. J.

6

CODRINGTON

J.